IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maxsuel DaMota,                           :
                                          : No. 618 C.D. 2015
                 Petitioner               : Submitted: September 18, 2015
                                          :
          v.                              :
                                          :
Workers' Compensation Appeal              :
Board (Panthera Painting, Inc.),          :
                                          :
                 Respondent               :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE FRIEDMAN                         FILED:  January 5, 2016


          Maxsuel DaMota (Claimant) petitions for review of the March 24, 2015,
order of the Workers' Compensation Appeal Board (WCAB) affirming the decision
of a workers' compensation judge (WCJ) to deny Claimant's claim and penalty
petitions.  We affirm.


          On October 2, 2012, Claimant  filed a claim petition alleging that he
sustained injuries on August 30, 2012, while performing work for Panthera Painting,
Inc. (Employer) on a bridge on State Route 4013 in Leechburg.  Claimant alleged that
he was injured after he fell off the bridge "approximately 60 feet into water

approximately one to two feet deep." Claimant alleged that as a result of his August 30, 2012, work injuries, he has been permanently disabled since September 10, 2012. (WCJ's Findings of Fact, No. 1.)

Also on October 2, 2012, Claimant filed a penalty petition alleging that Employer and Employer's insurance carrier violated the Workers' Compensation Act (Act),[1] by failing to properly investigate Claimant's August 30, 2012, work incident and failing to issue any documents accepting or denying Claimant's injuries. (*Id.*, No. 2.)

On May 22, 2013, the WCJ held a hearing on Claimant's petitions. Claimant testified that he performed sandblasting and painting work for Employer. Claimant testified that on August 30, 2012, he was working on a platform on the bridge. The platform gave way, causing Claimant and two other individuals, whom Claimant identified as Hindemburgo Oliveira[2] and David, to fall from the platform. Claimant testified that he fell into water that was one-to-two-feet deep and noticed blood on his face. Claimant testified that when he got out of the water, his boss, Kevin, told Claimant to take the rest of the day off and return to the hotel where Claimant was staying. (*Id.*, Nos. 4-5.)

Claimant testified that he then drove himself and Oliveira back to the hotel. (*Id.*, Nos. 5, 8.) At the hotel, Claimant began to feel pain in his face, back, and

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1–1041.4, 2501–2708.

[2] Oliveira also filed a claim petition against Employer and Employer's insurance carrier alleging that he sustained injuries from this incident.

shoulder. Claimant and Oliveira then went to a Pittsburgh hospital. (*Id.*, No. 5.) Upon arriving at the hospital, Claimant testified that Oliveira called Kevin and talked to him on speakerphone. (*Id.*) Claimant testified that he overheard Oliveira's telephone conversation with Kevin and that Kevin instructed Oliveira not to tell the hospital personnel that he and Claimant had fallen from the bridge. (*Id.*) Claimant testified that he did not obtain any medical treatment at the hospital that day because Employer had failed to pay for a prior work injury and Claimant did not have private health insurance or money for treatment. (*Id.*; N.T., 5/22/13, at 18-20.) However, Claimant testified that Oliveira did obtain treatment at the hospital that day. (WCJ's Findings of Fact, No. 5.) After leaving the hospital, Claimant returned to the hotel and stayed there for the next six days. (*Id.*)

Six days after his work injuries, Claimant received a call from Kevin, who asked him to try to return to work. Claimant attempted, but was unable, to perform the work. Claimant testified that he then returned to his home in Scranton and, on September 21, 2012, sought treatment at a hospital. Claimant testified that he was referred to Jack Henzes, M.D., a board-certified orthopedic surgeon. Claimant was still treating with Dr. Henzes as of the May 22, 2013, hearing. Claimant also testified that, as of the hearing, he continued to take pain pills for pain in his left shoulder and was not physically able to return to work for Employer. (*Id.*, Nos. 6-7.)

Oliveira testified on behalf of Claimant that on August 30, 2012, he, Claimant, and David fell from the bridge at the work site. (*Id.*, No. 9.) Oliveira testified that they fell into water that was approximately 17 inches deep and that he noticed blood and cuts on Claimant's face after the fall. (*Id.*) Oliveira confirmed

3

Claimant's testimony that Kevin told Oliveira not to tell the hospital personnel that they fell from the bridge. (*Id.*, No. 10.) Oliveira testified that he then lied to the hospital personnel when he received treatment, claiming that he was injured after work when he was looking for fish by the side of the water and slipped on rocks. (*Id.*, No. 11.)

Dr. Henzes testified by deposition that he first treated Claimant on October 24, 2012, at which time he took Claimant's medical history. (*Id.*, No. 12.) Claimant told Dr. Henzes that he injured his left shoulder while working on the bridge on August 30, 2012, when he and two other employees fell from the bridge into the water below. (*Id.*) Claimant provided pictures for Dr. Henzes that showed the trauma to his face and left upper arm. (*Id.*) Claimant also provided Dr. Henzes with pictures of the work site. (*Id.*) Dr. Henzes testified that, based on the pictures of the work site, Claimant fell "at least 30 to 40 feet." (*Id.*; N.T., 7/8/13, at 5.) Dr. Henzes testified that Claimant told him that he was evaluated at the Pittsburgh hospital after he sustained the work-related injuries, he subsequently had x-rays taken at a hospital in Scranton on September 21, 2012, and the x-rays did not reveal a fracture. (WCJ's Findings of Fact, No. 12.)

Dr. Henzes testified that, based on his October 24, 2012, examination of Claimant and the history that Claimant provided him, Claimant had a left shoulder contusion, a facial contusion, and left rib contusions as a result of the work incident. Dr. Henzes treated Claimant again on January 18, 2013, March 13, 2013, and June 10, 2013. On June 10, 2013, Dr. Henzes reviewed with Claimant a magnetic resonance imaging of Claimant's left shoulder, which revealed that Claimant had a

4

partial thickness tear of the supraspinatus tendon. Dr. Henzes recommended an outpatient therapy program. Dr. Henzes opined that Claimant was not capable of returning to work as a painter or sandblaster. (*Id.*, Nos. 13-14.)

On cross-examination, Dr. Henzes testified that when he first treated Claimant on October 24, 2012, Claimant indicated that he had fallen approximately 60 feet on August 30, 2012. Dr. Henzes also testified that he was surprised to learn that Claimant was not evaluated at the Pittsburgh hospital on August 30, 2012, as Claimant had indicated to Dr. Henzes. Dr. Henzes also testified that he was surprised to learn that Oliveira, who fell from the bridge with Claimant, told the medical personnel who treated him that he had fallen while looking for fish by the side of the water. Finally, Dr. Henzes testified that falling 60 feet is comparable to falling from a six-story building, and that he would expect Claimant and Oliveira would have more severe injuries after such "an extremely traumatic event." (*Id.*, No. 15.)

The WCJ rejected Claimant's and Oliveira's testimony as not credible. The WCJ found it "somewhat incredible, as Dr. Henzes . . . acknowledged," that Claimant could fall 60 feet without sustaining more serious injuries. (*Id.*, No. 16.) The WCJ also noted that Claimant waited until September 21, 2012, to accept medical treatment. (*Id.*) The WCJ noted that Claimant worked for Employer, which had workers' compensation coverage. (*Id.*) On that basis, the WCJ rejected Claimant's explanation that he did not initially obtain treatment because he did not have sufficient money or private insurance. (*Id.*) The WCJ also found that Claimant misrepresented his treatment history to Dr. Henzes. (*Id.*) Because Dr. Henzes acknowledged that he relied on Claimant's discredited account of his injuries, the

5

WCJ rejected Dr. Henzes' testimony to the extent that he opined that Claimant's injuries were caused by a work-related fall. (*Id.*)  Therefore, the WCJ determined that Claimant failed to meet his burden of proof and dismissed Claimant's claim and penalty petitions.  (WCJ's Conclusions of Law, No. 2.)  Claimant appealed to the WCAB, which affirmed.  This appeal followed.[3]

In a claim petition, the claimant bears the burden of proving all elements necessary to support an award of compensation. *Sysco Food Services of Philadelphia v. Workers' Compensation Appeal Board (Sebastiano)*, 940 A.2d 1270, 1274 (Pa. Cmwlth. 2008).  The claimant must prove that he was injured in the course and scope of his employment and that his injury was causally related to his employment. *Miller v. Workers' Compensation Appeal Board (Millard Refrigerated Services and Sentry Claims Service)*, 47 A.3d 206, 208 (Pa. Cmwlth. 2012).

First, Claimant argues that the WCJ capriciously disregarded Claimant's testimony that he did not seek treatment on August 30, 2012, because Employer had failed to pay for a prior work injury.  We disagree.

The WCJ is the ultimate factfinder and the sole arbiter of witness credibility and evidentiary weight, and he or she may accept or reject any witness's

---

[3] Our review is limited to determining whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are supported by substantial evidence.  Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704.  Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Williams v. Workers' Compensation Appeal Board (USX Corporation-Fairless Works)*, 862 A.2d 137, 143 n.6 (Pa. Cmwlth. 2004).  The relevant inquiry is whether substantial evidence supports the findings that were actually made, not whether the record contains evidence which might support contrary findings. *Id.* at 143-44.

testimony, in whole or in part. *Williams v. Workers' Compensation Appeal Board (USX Corporation-Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth. 2004). The WCJ's credibility determinations are binding on appeal unless they were arbitrary or capricious. *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Company)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006). "A capricious disregard of the evidence in a workers' compensation case is a deliberate and baseless disregard of apparently trustworthy evidence." *Williams*, 862 A.2d at 144. Otherwise competent testimony is not "apparently trustworthy" where it is clearly contradicted by opposing testimony. *Id.* at 145-46 n.8. "[T]he fact that a WCJ may not reiterate and/or pass specific review upon any particular line or portion of testimony does not necessarily constitute a capricious disregard thereof." *Id.* at 145-46.

Here, the WCJ articulated reasons for rejecting Claimant's testimony as a whole, specifically Claimant's testimony as to causation. The WCJ discredited Claimant's testimony that he fell approximately 60 feet, noting that Dr. Henzes stated that a fall from this height would usually cause more severe injuries than those sustained by Claimant. The WCJ also found Claimant's testimony that he did not receive any treatment on August 30, 2012, to be inconsistent with Dr. Henzes' credited testimony that Claimant told Dr. Henzes that he was treated on that date.[4] Although the WCJ did not specifically address Claimant's testimony that Employer failed to pay for his prior work injury, the WCJ sufficiently explained why he found Claimant's testimony to be untrustworthy. Therefore, the WCJ's failure to address that particular portion of Claimant's testimony did not constitute a capricious disregard thereof.

---

[4] Claimant does not dispute this discrepancy on appeal.

7

Claimant also argues that the WCJ capriciously disregarded Dr. Henzes' testimony as to the cause of Claimant's injuries. However, Claimant waived this issue because he did not raise it in his appeal to the WCAB, which is required by 34 Pa. Code §111.11(a)(2).[5] *See Matticks v. Workers' Compensation Appeal Board (Thomas J. O'Hora Company)*, 872 A.2d 196, 202 (Pa. Cmwlth. 2005) (finding that the employer waived issues by failing to raise them in its appeal to the WCAB, noting that "[t]he fact that Employer may have argued the issues in its brief to the [WCAB] is unavailing").

Next, Claimant argues that substantial evidence does not support the WCJ's finding that Claimant knew or should have known that Employer had workers' compensation insurance. We disagree.

An employer is liable to an injured employee for the employee's injury that arises in the course of his or her employment. Section 301(a) of the Act, 77 P.S. §431. "[I]n the absence of evidence of fraud, intentional deception, or the making of misleading statements, [an] employer [has] no affirmative duty to apprise a compensation claimant of any or all available benefits." *Miller v. Keystone Insurance Company*, 636 A.2d 1109, 1113 (Pa. 1994).

Here, the WCJ did not specifically find that Claimant knew or should have known that Employer was insured. Rather, the WCJ noted that Claimant was

---

[5] Even if Claimant had not waived this issue, the WCJ did not capriciously disregard Dr. Henzes' testimony as to causation because the WCJ expressly addressed and rejected this testimony.

8

Employer's employee and that Employer had workers' compensation insurance. In light of these undisputed facts, the WCJ discredited Claimant's excuse that he did not initially seek treatment because he did not have sufficient money or private insurance.

Claimant also argues that the WCJ's decision contravenes the Act's humanitarian purpose. However, Claimant waived this issue because he did not raise it in his appeal to the WCAB.[6] *See* 34 Pa. Code §111.11(a)(2); *Matticks*, 872 A.2d at 202.

Accordingly, we affirm.[7]

_____
ROCHELLE S. FRIEDMAN, Senior Judge

Judge Cohn Jubelirer concurs in the result only.

---

[6] Even if Claimant had preserved this issue, he would not have prevailed. Courts must liberally construe the Act to effectuate its humanitarian purpose and resolve borderline interpretations in favor of the claimant. *Gallie v. Workers' Compensation Appeal Board (Fichtel & Sachs Industries)*, 859 A.2d 1286, 1291 (Pa. 2004). Here, Claimant is not disputing a borderline interpretation of the Act; rather, he is disputing the WCJ's credibility and evidentiary determinations. Because we concluded that the WCJ's credibility and evidentiary determinations were not arbitrary or capricious, we may not second-guess them on the basis that they contravene the Act's humanitarian purpose.

[7] Claimant did not set forth any arguments regarding the denial of his penalty petition in his brief filed with this court. Therefore, all such arguments are waived. *See City of Philadelphia v. Workers' Compensation Appeal Board (Ford-Tilghman)*, 996 A.2d 569, 572 (Pa. Cmwlth. 2010) (holding that the employer waived the issue of a fee agreement by failing to discuss the issue in its brief's statement of questions involved or argument sections).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maxsuel DaMota,              :
                                : No. 618 C.D. 2015
           Petitioner     :
                                :
               v.              :
                                :
Workers' Compensation Appeal  :
Board (Panthera Painting, Inc.),  :
                                :
          Respondent    :

O R D E R

AND NOW, this 5th day of January, 2016, we hereby affirm the March 24, 2015, order of the Workers' Compensation Appeal Board.

_____
ROCHELLE S. FRIEDMAN, Senior Judge