IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peter Sneddon, : 
                  Petitioner : 
                   :
        v. : No. 278 C.D. 2020
                   : Submitted: September 25, 2020
Workers' Compensation Appeal : 
Board (American Airlines, Inc.), : 
            Respondent : 


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge[1]
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON              FILED:  February 4, 2021

Peter Sneddon (Claimant) petitions for review of the February 13, 2020 Order (Order) of the Workers' Compensation Appeal Board (Board), affirming the February 26, 2019 Decision and Order of the Workers' Compensation Judge (WCJ), denying the Claim Petition for Workers' Compensation Benefits (Claim Petition) filed by Claimant against American Airlines, Inc. (Employer).

## I.    Background

On October 26, 2017, Claimant filed the Claim Petition against Employer, alleging he sustained a work-related injury on September 20, 2016, described as "[d]ifficult breathing, allergic reaction to uniform causing fatigue,

---

[1] This case was assigned to the opinion writer prior to January 4, 2021, when Judge Brobson became President Judge.

insomnia, issues concentrating, memory loss, irritability, rash affecting neck chest arms and hips, swollen eyes and face." Reproduced Record (R.R.) at 2a. Claimant asserted that when he was provided with a new uniform[2] by Employer, he "immediately had an allergic reaction, resulting in dermatologic, neurologic and pulmonary issues." *Id*. Claimant seeks partial disability benefits from January 1, 2017, through March 30, 2017, and temporary total disability (TTD) benefits from March 31, 2017, ongoing. R.R. at 4a. Employer filed an Answer denying all the material allegations raised in the Claim Petition. R.R. at 6a-9a. The matter was assigned to the WCJ on October 30, 2017, and after taking evidence and holding hearings, the WCJ issued a Decision and Order, making the findings of fact and conclusions of law addressed in the narrative below.

## II. WCJ's Decision and Order

The WCJ summarized Claimant's testimony as part of her findings that follow. The WCJ found that Claimant was hired as a customer service agent on June 4, 2007,[3] but transferred to the position of flight attendant in October 2014. WCJ's Decision and Order, 2/26/2019, Finding of Fact (F.F.) No. 2.a. Employer provided a new uniform, *i.e.*, the Twin Hill uniform, to Claimant near the end of August 2016, and Claimant was instructed to fully transition to that uniform, beginning September 20, 2016. F.F No. 2.b. By mid-October 2016, Claimant began "to notice itching on his neck and chest, fatigue, and 'a little bit of memory loss.'" F.F. No. 2.c. Claimant did not report his symptoms to anyone at the time because he did not draw a connection between the uniform and his symptoms until December 2016, "when he

---

[2] The uniform is at times referred to in the record as the "Twin Hill" uniform because Twin Hill is apparently the name of the company that provided the uniforms to Employer.

[3] Claimant was originally hired by US Airways before its merger with Employer.

noted that he would get worse at work, and he would be better when he was at home." *Id*. Claimant was more fatigued than usual at the end of his work day. He noted that the itching he was experiencing progressed into a "chemical burn," that he had hives, with welts on his neck and chest, and that he experienced a rash which spread to his neck, chest, and waist. *Id*. Claimant took a voluntary leave of absence from Employer in January and February 2017 to see if his symptoms would subside while he was not working, and although his symptoms improved, they did not completely disappear. F.F. No. 2.e. In addition, Claimant's partner, who is a pilot for Employer, stopped wearing his uniform and disposed of it because of its effect on Claimant. F.F. No. 2.g.

When Claimant returned to work in March 2017, he began wearing his former uniform; something that was permitted by Employer, but he continued to experience symptoms when he was in direct contact with flight attendants or others wearing the Twin Hill uniform. F.F. No. 2.h. He worked for the entire month of March 2017, and then stopped working. *Id*. Claimant could not recall if he sought medical treatment when he took leave from work in January and February 2017, but he sought treatment on March 31, 2017 – the date he stopped working. In April 2017, Claimant went to Columbia University Dermatology, where he was subjected to patch testing, prescribed hydrocortisone, and told to "completely avoid the uniform." F.F. No. 2.i.

Claimant testified to experiencing symptoms whenever he had contact with his partner's uniform or a friend's uniform. F.F. No. 2.k. He experienced respiratory symptoms after he visited a friend's house where a Twin Hill uniform was kept in a closet. *Id*. Within the week prior to his deposition in this matter, Claimant had a visible rash on his neck and experienced itching. F.F. No. 2.l.

3

Claimant also experienced breathing difficulties from "certain cleaning products" and chemicals in "craft stores or hardware stores." *Id.* Claimant did not notice any welts after he stopped wearing the Twin Hill uniform, and his other symptoms resolved after he stopped working. *Id.* However, he occasionally continued to experience insomnia. *Id.*

Claimant testified, at an October 24, 2018 hearing before the WCJ, that he has worn three different uniforms while employed by Employer, but he never had any problems with the other two uniforms. F.F. No. 4.a. He testified that he felt better since discontinuing work and that he only experienced symptoms when exposed to the uniforms. F.F. No. 4.h. He testified that his partner is still employed as a pilot for Employer and is in contact with individuals who wear the new uniform. F.F. No. 4.k. Claimant acknowledged that his patch testing indicated he was sensitive to a preservative used in toiletry and cosmetic items, such as body creams, lotions, liquid soaps, shampoo, and conditioners. *Id.* However, Claimant testified he had not changed his cleaning or personal hygiene products in September 2016 and had never experienced symptoms around cleaning products or products used in the shower. F.F. No. 4.l. Claimant acknowledged that, after he began having problems with the new uniforms, he experienced general problems while in Walmart and Home Depot, including breathing issues and a rash on his neck. F.F. No. 4.m.

Claimant presented the February 14, 2018 deposition testimony of Michael Attanasio, D.O. F.F. No. 5. Dr. Attanasio is certified by the American Osteopathic Board of Family Practice. F.F. No. 5.a. As part of his regular practice, Dr. Attanasio treats individuals with allergic reactions. *Id.* However, he is "not [b]oard [c]ertified in medical toxicology and is not an allergist or occupational medicine physician." F.F. No. 5.m. Dr. Attanasio first evaluated Claimant on

November 9, 2017. F.F. No. 5.b. He took a detailed history from Claimant and reviewed Claimant's medical records. F.F. No. 5.b. and 5.e. Dr. Attanasio reviewed the records from Drs. Geskin and Belsito of Columbia University. F.F. No. 5.e. Dr. Geskin recommended the patch testing, which was performed on Claimant by Dr. Belsito and which revealed that Claimant had allergic reactions to Reactive Red 238, Acid Red 359, and benzisothiazolinone, an agent used in cleaning and laundry products. *Id.* As a result, Claimant was advised "to avoid laundry products with this [chemical], as well as textile materials treated with both reactive and acid red dyes." *Id.* Dr. Geskin recommended that Claimant remain out of work, and Dr. Attanasio agreed, noting that when Claimant is exposed to the uniform, "[it] is a permanent condition for him." F.F. No. 5.f.

Dr. Attanasio testified about a January 2018 letter that Employer received from the National Institute for Occupational Safety and Health (NIOSH) regarding the new uniforms. F.F. No. 5.g. NIOSH reviewed the results of testing on the uniforms and concluded that "[m]ultiple garments [contained] formaldehyde and heavy metals, such as cadmium," which Dr. Attanasio noted were "known potential allergens." *Id.* The WCJ found that Dr. Attanasio "based his causation opinion entirely on Claimant's history provided to him and other physicians." F.F. No. 5.m. Dr. Attanasio never observed rashes on Claimant when he examined him. F.F. No. 5.n. Dr. Attanasio diagnosed Claimant with two forms of dermatitis: (1) contact dermatitis and (2) atopic allergic dermatitis, "'which means that [the] central allergy system of his body is also having a reaction.'" F.F. No. 5.c. As part of his plan for addressing Claimant's issues, Dr. Attanasio advised Claimant not to return to work for Employer until it had "removed these uniforms for a long period of time." F.F. No. 5.d.

5

Employer presented the deposition testimony of Kenneth Katz, M.D., which was taken on September 27, 2018. F.F. No. 6. Dr. Katz is board certified in emergency medicine, internal medicine, and toxicology. F.F. No. 6.a. He evaluated Claimant on March 19, 2018, and reviewed Claimant's relevant medical records. F.F. No. 6.b. Dr. Katz reviewed photographs of Claimant but did not find anything in the photographs that was consistent with chemically induced or allergic contact dermatitis. F.F. No. 6.h. Dr. Katz reviewed the results of the patch test performed on Claimant by Dr. Belsito but determined that Claimant did not have any adverse reaction to anything in the uniform and that the mild reaction Claimant experienced was in regard to chemicals not found in the uniform. F.F. No. 6.i. Dr. Katz found insufficient medical or toxicological evidence to support Claimant's allegation that the new uniforms caused the effects on his health. F.F. No. 6.m.

Employer also presented the deposition testimony of Richard Pleus, Ph.D., M.S., who testified that he did not personally examine Claimant but that he reviewed Claimant's medical records and lab data, as well as toxicological literature. F.F. No. 7. and 7.b. Dr. Pleus found insufficient evidence to support Claimant's assertion that the new uniforms provided by Employer caused his skin reaction and other health effects. F.F. No. 7.cc. Dr. Pleus testified that skin patch testing ruled out the uniform as a cause of Claimant's symptoms. F.F. No. 7.ee.

Upon review of the evidentiary record before her, the WCJ found that Claimant did not meet his burden of proof on the Claim Petition. F.F. No. 10.b. The WCJ found that Claimant did not attribute his symptoms to wearing his new uniform until December 2016 and did not seek any medical treatment for his symptoms until April 2017. F.F. No. 10.a. The WCJ found that there was no obvious causal connection between Claimant's symptoms and the new Twin Hill uniform. F.F. No.

6

10.b. The WCJ found that Claimant did not experience an immediate reaction upon exposure to the new uniform and admitted that he experienced similar medical problems during periods of non-employment and after leaving Employer's place of business. *Id.*

The WCJ did not find Dr. Attanasio's testimony to be persuasive that there was a causal connection between Claimant's symptoms and the Twin Hill uniform. F.F. No. 10.c. She found Dr. Katz's testimony more credible and persuasive than Dr. Attanasio's testimony to the extent they differed. *Id.* The WCJ found Dr. Pleus's testimony both credible and persuasive, noting that it was unrebutted by anyone with similar expertise and that he conducted "a complete and thorough analysis . . . of the new uniform fabric." F.F. No. 10.d. The WCJ added that "Dr. Attanasio did not have the proper qualifications to perform a toxicology assessment," and Dr. Pleus's opinions were consistent with Dr. Katz's opinions. *Id.*

The WCJ concluded that Claimant did not successfully prove "he suffered a work-related pulmonary, neurologic or dermatologic injury as [a] result of direct, indirect, or alleged airborne exposure to the new . . . uniform. Additionally, . . . Claimant has not met his burden of proof that his reported intolerance to certain cleaning products and public establishments was causally related to his direct, indirect or alleged airborne exposure to the new . . . uniform." WCJ's Conclusion of Law No. 3.

Claimant subsequently appealed to the Board arguing that (1) the WCJ erred by denying his Claim Petition because the substantial, competent evidence of record did not support the WCJ's finding that Claimant did not sustain a work-related injury and (2) the WCJ failed to issue a reasoned decision.

### III. Board's Opinion and Order

The Board determined that it could not re-weigh the evidence or disturb the WCJ's credibility determinations and affirmed the Decision and Order of the WCJ. As the Board succinctly stated:

> Because the WCJ chose to accept Dr. Katz's and Dr. Pleus's opinion that Claimant did not sustain a work-related injury on September 20, 2016, Claimant was unable to meet his burden of proving that he sustained a work-related injury on September 20, 2016. In addition, we reject Claimant's argument that the WCJ failed to issue a reasoned decision. The WCJ summarized the testimony of the witnesses and made credibility determinations. She explained the reasons for those credibility determinations, and we were able to determine how her result was reached. The WCJ's Decision allowed for adequate appellate review by the Board.

Board's Op. at 8-9.

Claimant now petitions this Court for review.[4]

### IV. Arguments

### A. Claimant's Arguments

Claimant acknowledges that it is generally improper to question the WCJ's credibility determinations and assignment of weight to the evidence of record. However, Claimant asserts "the WCJ's [D]ecision was based on mischaracterizations and inaccuracies in her findings of fact and credibility determinations," and she "capriciously disregarded significant evidence and her

---

[4] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830 (Pa. 2013). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Phila. v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

8

findings are not supported by substantial competent evidence of record."[5] Claimant's Br. at 8.

Claimant notes that Dr. Attanasio relied on patch testing performed by another doctor who used the actual uniform and "particular circumstances of Claimant's case as well as the significant corroborating evidence from other employees at Employer who sustained identical problems to conclude that Claimant's allergic reaction was caused by the new uniform." Claimant's Br. at 12.

Claimant adds that Dr. Attanasio also relied on the NIOSH report, which summarized a health hazard evaluation regarding symptoms attributed to the uniforms introduced by Employer from May to September 2016. *Id.* Claimant states that the report revealed that, "[a]fter extensive research, NIOSH could not rule out the fact that the textiles used in the uniforms, or the physical irritant properties of the uniform fabrics, could have caused skin symptoms in those employees who wore the uniforms." Claimant's Br. at 13 (citing R.R. at 245a). Further, Claimant notes that the NIOSH report made a number of recommendations to Employer, including instructing employees to take advantage of alternative uniform choices, encouraging employees to report potential work-related health conditions to their supervisor, individual evaluation of employees experiencing persistent symptoms by an

---

[5] In its Opinion, the Board noted that Claimant alleged the WCJ capriciously disregarded evidence while rendering her Decision and Order. However, the Board determined that Claimant had only made this allegation in his brief but had failed to allege the issue in the appeal, *i.e.*, on the appeal form itself, and thus the argument was deemed waived. Bd. Op. at 2, n.1. In support of its determination, the Board cited *Matticks v. Workers' Compensation Appeal Board (Thomas J. O'Hora Co.)*, 872 A.2d 196 (Pa. Cmwlth. 2005) "(arguing issues in the brief to the Board does not cure the failure to preserve issues in the notice of appeal with specificity)." Board's Op. at 2, n.1. Claimant has, in his brief in the matter before us, also asserted that the WCJ "capriciously disregarded evidence." To the extent we see no error in the Board's determination that this assertion was waived by Claimant, it is also inapplicable here. We evaluate Claimant's appeal in the matter before us based on whether the WCJ's Decision and Order was based on substantial, competent evidence of record.

9

occupational medical physician, evaluation by a dermatologist for employees experiencing persistent rash, and removal of employees with diagnosed health problems related to the uniform from exposure. Claimant's Br. at 14.

Claimant argues:

> While Dr. Attanasio may not have personally observed the dermatitis in a clinical setting, his opinions were supported by the treatment records of [another doctor] and his review of the NIOSH report, which confirmed that other employees had experienced similar symptoms, as described by Claimant, as a result of wearing the new work uniform.

Claimant's Br. at 15.

Claimant cites *Zimmerman v. Workmen's Compensation Appeal Board (Himes)*, 519 A.2d 1077 (Pa. Cmwlth. 1987), for the proposition that "greater credence may be given to the testimony of a treating physician than to a physician who examines a claimant solely for the purpose of providing testimony in workers' compensation proceedings." Claimant's Br. at 15. In this regard, Claimant asserts that the WCJ failed to give proper weight to the testimony of Dr. Attanasio in the present matter. *Id*.

Claimant concludes that "[t]he WCJ capriciously disregarded competent, uncontradicted and overwhelming evidence that would have required a different outcome." Claimant's Br. at 16. Thus, Claimant asserts, the Board's affirmance of the WCJ's Decision and Order should be reversed.

### B. Employer's Arguments

In response to Claimant's contentions, Employer states that, based on a review of Claimant's history, medical records, patch testing results, and deposition testimony, Dr. Katz found "no concrete, objective, consistent evidence [Claimant] had a chemically or allergy induced response to the new uniform." Employer's Br. at 5. Employer notes that, in regard to patch testing, which included swatches from

10

Claimant's own uniform, the results revealed "no reactions to the uniform and . . . only mild reactions to a few common chemicals that are not present in the uniform." Employer's Br. at 5-6. Employer adds that Claimant's symptoms are inconsistent with "the geographic distribution that is associated with textile-induced allergic contact dermatitis, which develop[s] in areas of perspiration and where garments fit tightly releasing dyes in those areas," and that Claimant's account of developing symptoms "with indirect or airborne contact with the uniform or those who have worn it is inconsistent with textile[-]induced dermatitis and is not described in the medical literature." Employer's Br. at 6. Employer further asserts that Claimant's "broad constellation of ill-defined and subjective symptoms such as brain fog, chest pressure, insomnia and difficulty with mood have no physiologic relationship to a textile[-]induced allergic contact dermatitis." *Id*.

Employer adds that Dr. Pleus concluded that Claimant's health conditions were not caused by the Twin Hill uniform. Employer's Br. at 7. Employer states that "[t]he patch testing results in [Claimant's] case did not support a causal relationship between the new [Employer] uniform and his alleged symptoms. If anything, the patch testing ruled out an allergenic etiology associated with the new . . . uniform." Employer's Br. at 11. Employer further states: "Given the results of the patch testing, [Claimant's] reported symptoms when shaking hands with co-workers, when hugging co-workers who were not even wearing the uniform, or while laundering his partner's uniform were equally implausible." *Id*. Employer notes "[i]f [Claimant] did not react to the uniform with direct patch testing, there is no expectation that he would have a reaction when shaking hands or hugging someone wearing the uniform. That scenario would only be plausible if he was

11

exposed to an extremely potent toxicant, such as a chemical warfare agent. That did not occur here." Employer's Br. at 11-12.

Employer contends that Dr. Attanasio never observed evidence that Claimant had dermatitis, only diagnosed allergic contact dermatitis based on the timing of Claimant's reported symptoms with exposure to the new uniform, and agreed that Claimant was not physically disabled from work. Employer adds that Dr. Attanasio never "endorsed the theory of airborne or proximity allergic contact dermatitis," saying only "it was a 'question' but did not address it further." Employer's Br. at 24.

Employer argues that Dr. Attanasio's opinion was not legally competent because it was based on the oral history Claimant provided to him rather than on objective findings. Employer's Br. at 25 (citing *Lewis v. Workmen's Comp. Appeal Bd. (Pittsburgh Bd. of Educ.)*, 498 A.2d 800, 803 (Pa. 1995) ("[A] physician's assumption that an injury is caused by a recent event because of the temporal proximity is not considered a sufficiently competent opinion to establish a causal relationship.")). Employer adds that Claimant "failed to produce *any* evidence that he was exposed to anything hazardous or harmful to him in his uniform, [thus,] the opinions of Dr. Attanasio and Dr. Geskin lacked a proper foundation." Employer's Br. at 27 (emphasis in original).

In addition, Employer asserts that "the WCJ summarized all of the evidence, made all necessary finding[s] of fact and conclusions of law to address the issues raised in the litigation, and explained, with specificity, the reasons for both her credibility determinations and her ultimate decision. The WCJ set forth multiple reasons for rejecting [Claimant's] testimony and his medical evidence in favor or that presented by [Employer]." Employer's Br. at 28. Further, "the WCJ's

12

explanations of her findings are sufficient to allow for adequate appellate review and satisfy the reasoned decision requirement of the [Pennsylvania Workers' Compensation Act (Act)[6]]." Employer's Br. at 29. Thus, Employer argues that the WCJ's Decision and Order is based on substantial competent evidence and is reasoned, was appropriately affirmed by the Board, and should be affirmed by this Court.

## V. Discussion

Based on our review of the facts, relevant case law, and the arguments advanced by the parties in the matter before us, we affirm the Order of the Board. Succinctly, this case comes down to whether the WCJ's Decision and Order was based on substantial, competent evidence of record and was reasoned. It was both.

"A decision is 'reasoned' for purposes of [the Act] if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. A reasoned decision is no more, and no less." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). In her 17-page Decision and Order, the WCJ outlined, in detail, the evidence that was before her. She made specific credibility determinations and assignments of weight to the evidence of record and provided a clear roadmap for the reader to understand her conclusions. Thus, the WCJ met the reasoned decision requirement of the Act. We next address the matter of whether the Decision was based on substantial competent evidence.

In a workers' compensation case, the WCJ is the sole arbiter of fact. *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434 (Pa. 1992). The findings of the WCJ can only be disturbed if there is no competent

---

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

13

evidence to support the findings. *Universal Cyclops Steel v. Workmen's Comp. Appeal Bd. (Krawczynski)*, 305 A.2d 757 (Pa. Cmwlth. 1973). The WCJ is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses. *Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995) (citation omitted). Determinations of credibility and the weight to be afforded evidence are the prerogative of the WCJ, not the Board. *Vols v. Workmen's Comp. Appeal Bd. (Alperin, Inc.)*, 637 A.2d 711 (Pa. Cmwlth. 1994).

In the present matter, the WCJ found that Claimant did not attribute his symptoms to wearing his new uniform until December 2016 and that he did not seek medical treatment for these same symptoms until April 2017. The WCJ found that Claimant did not experience an immediate reaction upon exposure to the uniform and admitted that he experienced similar medical problems during periods when he was not working and after leaving Employer's place of business. Accordingly, the WCJ found that there was no obvious causal connection between Claimant's symptoms and the new uniform he was provided by Employer. "Where there is no obvious causal connection between an injury and the alleged cause, that connection must be established by unequivocal medical testimony." *Lewis v. Commonwealth*, 498 A.2d 800, 802 (Pa. 1985) (citation omitted). Thus, Claimant required unequivocal medical testimony to establish the connection between his exposure to the Twin Hill uniform(s) and his disability, *i.e.*, wage loss.

In her review and evaluation of the medical evidence, the WCJ found Dr. Katz's testimony more credible and persuasive than Dr. Attanasio's to the extent their respective testimony differed, and she found that Dr. Pleus's testimony was both credible and persuasive, noting that it was unrebutted by anyone with similar

14

expertise and was consistent with the opinions expressed by Dr. Katz. The WCJ further determined that Dr. Attanasio did not possess the proper qualifications to perform a toxicology assessment. While it is true, as Claimant asserts, that Dr. Attanasio was Claimant's treating physician, the WCJ was not required to accept Dr. Attanasio's opinion on that basis alone.

As this Court stated in *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Company)*: "[The Act] does not require the WCJ to discuss all of the evidence presented. The WCJ is only required to make the findings necessary to resolve the issues raised by the evidence and relevant to the decision." 893 A.2d 191, 194 n.4 (Pa. Cmwlth. 2006) (internal citation omitted). Despite Claimant's contention in his appeal form to the Board that "the [WCJ] failed to include pertinent, material portions of [Claimant's] testimony in her Decision and therefore did not rely on the evidentiary record as a whole," we see no support for Claimant's contention that the WCJ disregarded any evidence. *See* R.R. at 29a. To the extent Claimant's contention may be construed as his disagreement with the WCJ's summation of evidence in her Decision, we note, per *Dorsey*, that she was under no obligation to discuss every scintilla of evidence presented to her.

Here, the WCJ made the requisite credibility determinations, per her discretion to do so, made findings based on the substantial competent evidence of record, and wrote a reasoned Decision and Order. Thus, the Decision was properly affirmed by the Board. Claimant's Petition for Review to this Court is, at its essence, a disagreement with the outcome. However, in and of itself, this is no basis for us to disturb the result. Accordingly, we affirm the Board's Order.

15

## VI.    Conclusion

For the foregoing reasons, we affirm the Order of the Board.


_____
J. ANDREW CROMPTON, Judge


Judge Fizzano Cannon did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peter Sneddon,                          :
                       Petitioner     :
                                     :
              v.                      :   No. 278 C.D. 2020
                                     :
Workers' Compensation Appeal           :
Board (American Airlines, Inc.),       :
                     Respondent     :

## **O R D E R**

        **AND NOW**, this 4th day of February 2021, the February 13, 2020 Order of the Workers' Compensation Appeal Board is **AFFIRMED**.


                                        _____
                                        J. ANDREW CROMPTON, Judge