**Joseph MATTICKS, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (THOMAS J. O'HORA COMPANY, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 10, 2004.

Decided March 9, 2005.

Reconsideration Denied May 12, 2005.

---

9. Pa. R.C.P. No. 1028(a)(3).

Mary D. Walsh–Dempsey, Scranton, for petitioner.

Marta J. Guhl, Philadelphia, for respondent.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Joseph Matticks (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) affirming, as modified, an amended order of Workers' Compensation Judge Howard M. Spizer (WCJ) that granted Claimant's claim petitions for specific loss benefits and payment of medical bills. The issues include whether the Board had authority to grant a petition for rehearing filed by Thomas J. O'Hora Company, Inc. (Employer) and thereafter to reinstate its voluntarily withdrawn appeal; whether Employer waived its right to challenge the WCJ's decision; and whether the WCJ's denial of a credit to Employer for the total disability benefits it paid is supported by substantial, competent evidence.

I

On November 14, 1997, Claimant sustained a spinal cord injury in the course of his employment with Employer as a pipe fitter, and he began receiving total disability benefits pursuant to a notice of compensation payable (NCP), which indicated an average weekly wage of $1118.89 with a weekly compensation rate of $542. On September 22, 2000, Claimant filed three

claim petitions seeking payment for nursing care provided by his wife, payment of medical bills from his physicians and benefits for a specific loss of use of both arms.

Claimant testified before WCJ Howard M. Spizer that he felt pain in his arms while carrying a heavy piece of pipe on November 14, 1997, and that he was admitted to the hospital the next day. Claimant underwent cervical surgery on November 21, 1997, but despite surgery he continued to have pain in his shoulder down into his hands and the conditions of his arms worsened. The WCJ observed that the four digits on Claimant's right hand were bent inward toward his palm and that the thumb was extended upward or outward. Claimant, among other things, was unable to close or open his hands and could not control the left hand or pick up any heavy items. After surgery Claimant participated, unsuccessfully, in a series of occupational therapies, and he relied upon his wife for all of his daily personal care and activities. Claimant's vehicle is equipped with a special key to start the ignition and a tripod over the steering wheel through which he can place his wrists to steer the vehicle, but someone has to open the car door and connect the seat belt.

After his injury, Claimant began treating for depression, and he suffered problems with his bowels and bladder. Claimant's wife, Nancy Matticks, testified that upon the recommendation of Claimant's physician, she quit her full-time job with J.C. Penny Telemarketing, earning $10.71 per hour to provide full personal care for Claimant. Jeanne Wonnell Frye, a registered nurse and an expert in life-care planning, testified on behalf of Claimant that a physical therapist, a certified nurse assistant or an LPN would be paid $11 per hour for the type of personal care services that Claimant's wife provided to him. She

related that other than the ability to eat with his hands, Claimant cannot use his hands for other daily activities.

Claimant submitted various medical reports. Dr. Victor T. Ambruso, a board-certified neurosurgeon who examined Claimant in October 1999 and on October 5, 2000, opined that Claimant sustained a neck injury on November 14, 1997 and developed disc herniation and significant compression on the spinal cord over the next few days, eventually leading to central cord syndrome. By the time of the cervical surgery on November 21, 1997 damage to Claimant's spinal cord had already occurred because of a delay in diagnosis, which resulted in permanent plegia, i.e., paralysis, in both upper extremities. Dr. Ambruso stated that on October 5, 2000, Claimant complained of pain in his neck and arm and incontinence of the bowel and bladder and that his examination showed severe damage to the cervical cord starting at the C5–6 level caused by the cord damage sustained in the work injury. Claimant's loss of use of both arms resulted from the central cord syndrome's rendering his extremities useless for all practical intents and purposes, and he was totally disabled from the pain causing him to be totally dependent on his wife for his care. He suffered as well from depression.

Both parties submitted a medical report from Dr. Robert W. Mauthe, a board-certified physiatrist, who opined that Claimant lost the use of both hands for all practical intents and purposes due to the central cord syndrome. Also he suffered no separate and distinct injury apart from the specific loss due to disc herniation, and although the herniation was corrected the effects thereof remained. According to a report from Dr. Christopher Metzger, a board-certified orthopedic surgeon, Claimant was unable to perform his daily activi-

ties due to the central cord syndrome. K. Gendron, Ph.D., a psychologist, opined that Claimant was severely depressed due to the injury and the resulting physical limitations and that he would remain disabled for the rest of his life. Finally, Dr. Edwin Sherwin, a physician board-certified in internal medicine and gastroenterology who had treated Claimant since December 1998, opined that Claimant's abdominal pain, bladder retention and constipation were all related to the neurologic work injury.

In a decision circulated on January 8, 2002, the WCJ stated as follows in Finding of Fact 16:

> After reviewing the evidence this WCJ accepts as credible and persuasive, the report of Dr. Ambruso, is found to be convincing and persuasive, which has been identified as claimant's exhibit number six (6) in which he concludes that the claimant has sustained loss of use of both arms, and not only his hands, as a result of the work injury of November 14, 1997, resulting in a C5–6 central cord injury. This WCJ also finds persuasive and convincing all the other medical reports submitted by the claimant confirming that in addition to the loss of use of his arms, he also has other medical conditions which requires payment for medical services for treatment rendered by Dr. Gendron, for psychological purposes, Dr. Sherwin, for bowel and incontinence purposes, Dr. Kohn, for neurologic purposes, as well as his family physician Dr. Kaville. By accepting Dr. Ambruso's testimony as credible, this WCJ finds that the claimant sustained a specific loss of both arms for all practical intents and purposes, remains totally disabled from any type of employment and requires treatment with regard to the medical conditions set forth in reports submitted by the claimant.

In his amended order circulated on January 25, 2002, the WCJ awarded Claimant specific loss benefits for both arms in the amount of $542 per week for 820 weeks (or 410 weeks for each arm), pursuant to Section 306(c)(3) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 513(3), and a forty-week healing period (twenty weeks for each arm) effective October 5, 2000 (the date of Dr. Ambruso's last examination). Employer was ordered to pay the unpaid medical bills and to pay $100 per day seven days a week for personal care services provided by Claimant's wife, effective September 19, 2000. Employer appealed both decisions to the Board.

On June 17, 2002, the parties entered into a compromise and release agreement to resolve Claimant's claim petition for the payment of personal care services provided by his wife. Employer agreed to pay Claimant $350 per week for 820 weeks for personal care services from October 5, 2000 or for the duration of Claimant's life, whichever is shorter. In a decision circulated July 3, 2002, the WCJ approved the agreement and discharged Employer and its insurance carrier "from liability under the Act only as set forth more fully and at length in the compromise and release agreement." WCJ's July 3, 2002 Decision, Conclusion of Law No. 3. In the order, however, the WCJ stated that "[a]ll liability of the employer and/or its insurance carrier under the Act is fully discharged in exchange for the payment of the sums outlined in the compromise and release agreement...."

On October 30, 2002, another attorney from the same law firm that represented Employer sent the Board a letter requesting that Employer's appeal be marked as withdrawn, and the Board withdrew the appeal and closed the record by order

dated November 5, 2002. On November 15 Employer's attorney sent the Board another letter requesting reinstatement of the appeal because its withdrawal was made under the mistaken belief that the compromise and release agreement resolved all outstanding claims. The Board denied the request on July 11, 2003, but upon petition by Employer for rehearing/reconsideration the Board vacated its order on November 14 and reinstated Employer's appeal.

■■■■ The Board subsequently reviewed the merits of the appeal, and it modified the WCJ's decision by granting Employer a credit for total disability benefits it paid under the NCP because Claimant had no disability separate and apart from his arms, which have resolved into a specific loss. In addition, the Board reduced Claimant's healing period for the specific loss of both arms to twenty weeks because the healing periods for both arms are to run simultaneously. The Board affirmed the WCJ's decision in all other respects.[1]

## II

■■■■ Claimant argues that the Board lacked authority to grant a rehearing and to reinstate Employer's appeal under Section 426 of the Act, added by Section 6 of the Act of June 26, 1919, P.L. 642, 77 P.S. § 871, which provides in part:

> The board, upon petition of any party and upon cause shown, may grant a rehearing of any petition *upon which the board has made an award or disallowance of compensation or other order or ruling*, or upon which the board has sustained or reversed any action of a referee; but such rehearing shall not be granted more than eighteen months after the board has made such award, disallowance, or other order or ruling, or has sustained or reversed any action of the referee. (Emphasis added.)

Claimant asserts that the Board's order is not an "award or disallowance or other order or ruling" under Section 426. However, the Court is guided by the well-established rule of statutory construction that the clear and unambiguous language in a statute may not be disregarded under the pretext of pursuing its spirit. *See* Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b); *Borough of Glendon v. Department of Environmental Resources*, 145 Pa.Cmwlth. 238, 603 A.2d 226 (1992). Claimant's interpretation would result in a disregard of the express language of Section 426 and thereby reduce the words "other order or ruling" to mere surplusage.[2] *See* 1 Pa.C.S.

---

1. The Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether a practice or procedure of the Board was not followed or whether the findings of fact are supported by substantial evidence in the record. 2 Pa.C.S. § 704; *Gunter v. Workers' Compensation Appeal Board (City of Philadelphia)*, 573 Pa. 386, 825 A.2d 1236 (2003). The appellate role is not to reweigh the evidence or to review witness credibility; rather, the appellate court must simply determine whether the WCJ's findings have the requisite measure of support in the record as a whole. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992). The WCJ is free to accept or to reject the testimony of any witness, including a medical witness, in whole or in part. *City of Philadelphia v. Workers' Compensation Appeal Board (Rilling)*, 827 A.2d 1258 (Pa.Cmwlth.), *appeal denied*, 578 Pa. 717, 854 A.2d 968 (2003).

2. Claimant's reliance on *Clark v. Workmen's Compensation Appeal Board (Keystone Lawn Spray)*, 672 A.2d 348 (Pa.Cmwlth.1995), *School District of Philadelphia v. Workmen's Compensation Appeal Board (McClary)*, 680 A.2d 36 (Pa.Cmwlth.1996), and *Haverford State Hospital v. Workmen's Compensation Appeal Board (Johnson)*, 675 A.2d 396 (Pa. Cmwlth.1996), is misplaced. In those cases, this Court held only that the Board lacked the

§ 1921(a). More importantly, the Board has broad discretion to grant a rehearing upon cause shown under Section 426 of the Act. *Cudo v. Hallstead Foundry, Inc.,* 517 Pa. 553, 539 A.2d 792 (1988).[3]

In the compromise and release agreement, the parties agreed to discharge Employer from liability to pay for the personal care services provided by Claimant's wife. The two remaining claim petitions were not covered by the agreement. The Board found, and Claimant does not dispute, that Employer's new attorney immediately sought reinstatement of the appeal after realizing the error in withdrawing Employer's appeal. Claimant does not allege prejudice resulting from the Board's decision to grant a rehearing and to reinstate Employer's appeal, and because the undisputed facts in this case establish cause for granting Employer's request the Board did not abuse its discretion in reinstating the appeal.

■ Next, Claimant argues that Employer waived the issues of its entitlement to a credit for payment of total disability benefits and the propriety of the WCJ's award for the healing period because Employer only listed by numbers the challenged findings of fact and conclusions of law in the notice of appeal form filed with the Board. The regulation at 34 Pa.Code § 111.11(a)(2) provides that an appeal must be filed "on a form provided by the Board or on a form containing substantially ... [a] statement of the particular grounds upon which the appeal is based, including reference to the specific findings of fact which are challenged and the errors of law which are alleged" and that "[g]eneral allegations which do not specifically bring to the attention of the Board the issues decided are insufficient."

Claimant relies on this Court's recent holding in *Jonathan Sheppard Stables v. Workers' Compensation Appeal Board (Wyatt),* 739 A.2d 1084, 1089 (Pa.Cmwlth. 1999), wherein the Court concluded that the employer "utterly failed to raise any of the foregoing claims of error with any degree of specificity in its appeal to the Board." The employer in that case claimed that the WCJ exceeded the scope of the Board's remand order by allowing new testimony, erred in determining that the claimant was in the course of employment at the time of the accident and erred in awarding specific loss benefits due to

statutory authority to grant a rehearing after the expiration of the eighteen-month time period under Section 426, a situation that does not exist here.

In *Clark* the Court questioned the applicability of Section 426 to the petition for rehearing filed seeking reinstatement of the voluntarily withdrawn appeal, stating: "It is not clear that the Board's order merely accepting the voluntary withdrawal of Claimant's appeal and closing the record in the case constitutes an 'award or disallowance of compensation or other order or ruling' from which a rehearing could be granted." *Clark,* 672 A.2d at 350 n. 6. As Claimant acknowledges, the Court did not rule on the applicability of Section 426 under the circumstances.

**3.** *See also Bigley v. Unity Auto Parts, Inc.,* 496 Pa. 262, 272, 436 A.2d 1172, 1177–78 (1981)

("[T]here is an implied authority at the administrative level to accept a unilateral request of withdrawal by the party presenting the claim prior to adjudication or agreement.... The power to reinstate a gratuitous unilateral withdrawal should be liberally exercised absent a significant showing of prejudice by the other parties involved."); *Powell v. Workmen's Compensation Appeal Board,* 65 Pa.Cmwlth. 588, 443 A.2d 426 (1982) (compensation authorities have broad discretion to reinstate gratuitously withdrawn petition to set aside final receipt, settlement or agreement after expiration of limitations period); *McBride Transp. Co., Inc. v. Workmen's Compensation Appeal Board,* 50 Pa.Cmwlth. 593, 413 A.2d 470 (1980) (failure to appeal order withdrawing an appeal has no effect on Board authority to reinstate appeal).

disfigurement. In its appeal form, the employer merely listed the WCJ's findings that allegedly were in error and were not supported by substantial evidence (Findings 3–8, 12–23); the employer specified as well that the WCJ committed errors of law (Conclusions 2–10); and the employer attached a copy of the WCJ's decision to the appeal form.

Here, Employer followed the identical appeal process utilized by the employer in *Jonathan Sheppard Stables*. Employer's appeal form simply listed WCJ Spizer's findings of fact (Nos. 3–19) that allegedly were not supported by substantial competent evidence and listed the WCJ's conclusions of law (Nos. 2–5) that allegedly contained errors of law. Employer also attached a copy of the WCJ's decision to the appeal form. Based on *Jonathan Sheppard Stables*, the Court is compelled to agree with Claimant that Employer effectively waived its arguments as to the WCJ's disposition of the credit and the healing period because Employer failed to properly preserve those issues in its appeal.[4] The fact that Employer may have argued the issues in its brief to the Board is unavailing as it failed to comply with 34 Pa.Code § 111.11(a). Accordingly, the Court reverses the Board's order to the extent that it granted a credit to Employer for total disability payments and reduced the healing period to twenty weeks as those issues were waived. The Court otherwise affirms the Board's order.

---

**4.** *See also Williams v. Workmen's Compensation Appeal Board (Green Constr. Co.),* 687 A.2d 428 (Pa.Cmwlth.1997). *But compare Garnett v. Workmen's Compensation Appeal Board (Equitable Gas Co.),* 158 Pa.Cmwlth. 100, 631 A.2d 705 (1993) (holding that employer's notice of appeal sufficiently notified Board and claimant of issues presented where employer only listed numbers of the challenged findings and conclusions of law in the appeal form but noting that the court had

## ORDER

AND NOW, this 9th day of March, 2005, the order of the Workers' Compensation Appeal Board is reversed to the extent that it granted Thomas J. O'Hora Company, Inc. a credit for total disability payments it made to Joseph Matticks and reduced his healing period from forty weeks to twenty weeks. The Board's order is affirmed in all other respects.

located no dispositive case law on the issue and counsel had not provided any); *Sheridan v. Workers' Compensation Appeal Board (Anzon, Inc.),* 713 A.2d 182 (Pa.Cmwlth.1998) (holding that where petitioner failed to file brief before Board but raised the issue in his notice of appeal (whether employer liable for benefits after specified date in absence of order of agreement to suspend etc.) did not constitute waiver or interfere with effective appellate review).