IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joan M. Rotegliano,                          :     **CASES CONSOLIDATED**
           Petitioner                  :
                                 :
          v.                          :
                                 :
Clinton Hospital Corporation (Workers' :
Compensation Appeal Board),              :     No. 616 C.D. 2021
           Respondent                :
                                 :
                                 :
Clinton Hospital Corp.,                      :
           Petitioner                  :
                                 :
          v.                          :
                                 :
Joan M. Rotegliano (Workers'             :
Compensation Appeal Board),              :     No. 628 C.D. 2021
           Respondent                :     Submitted: January 21, 2022


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE LORI A. DUMAS, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: May 12, 2022


       Joan M. Rotegliano (Claimant) petitions for review from the May 19, 2021, order of the Workers' Compensation Appeal Board (Board), which affirmed the April 16, 2020, order of the Workers' Compensation Judge (WCJ). The WCJ's order granted a suspension petition filed by Clinton Hospital Corporation (Employer) based on Claimant's failure to attend a scheduled independent medical

examination (IME); granted Employer's utilization review (UR) petition concerning Dr. Michael Greenberg's prescription to Claimant of opioid pain medication; and ordered that Claimant undergo periodic testing to determine whether she resumes using opioid pain medication from a source other than Dr. Greenberg. Employer cross-petitions for review from the Board's denial of Employer's motion to quash Claimant's appeal to the Board from the WCJ's order. Upon review, we affirm.

## I. Factual & Procedural Background

On April 12, 1993, Claimant sustained a work-related injury. WCJ Op., 4/16/20, at 6; Reproduced Record (R.R.) "A." Via a Notice of Compensation Payable, Employer accepted the injury, described as Herniated Nucleus Pulposus (HNP) at C5-6, and began paying wage loss and medical benefits, including payment for cervical surgery several weeks after the incident. *Id.* In February 2015, the current WCJ issued a decision expanding the description of Claimant's injury to include aggravation or acceleration of degenerative changes at C4-5 and C6-7, nerve root encroachment and spinal cord compression at C4-5, and mildly increased narrowing at C5-6. *Id.* at 7. That decision also upheld a UR report finding Claimant's prescriptions by Dr. Greenberg for opioids, including multiple daily doses of Percocet, Hydrocodone liquid, and Valium, to be reasonable and necessary. *Id.*

On August 4, 2017, the WCJ issued a decision and order granting Employer's petition for physical examination and ordering Claimant to undergo an IME with Dr. William Beutler, M.D. (Dr. Beutler) on August 10, 2017, at an address in Harrisburg. WCJ Op. at 8. On August 11, 2017, Employer filed a suspension petition based on Claimant's failure to attend the scheduled IME. *Id.* at 5. Relevant

2

to this appeal, the following petitions were also before the WCJ in this litigation: UR petitions filed by both sides in August 2017 concerning Claimant's treatment with Dr. Greenberg, her longtime treating doctor for these injuries; Employer's April 2018 suspension petition asserting refusal of reasonable treatment (in-patient treatment for opioid dependency); and Employer's April 2018 petition to review medical treatment (in-patient rehabilitation for opioid dependency).[1] *Id*. at 5-6.

Claimant testified twice before the WCJ. WCJ Op. at 11-16. Claimant also submitted affidavits from herself and her caregiver-driver, stating that they did not have the correct address for the IME and had to try two different addresses before finding the correct location, but arriving too late because Dr. Beutler had left for the day. *Id*. at 33. Employer submitted the deposition testimony of Dr. Beutler, who was able to conduct an IME of Claimant in November 2017, and Dr. Michael R. Clark (Dr. Clark), who conducted a medical records review of Claimant's medical treatment, specifically Dr. Greenberg's continuing prescriptions for opioid pain medication. *Id*. at 16-32. Employer also presented the UR reviewer's report finding Dr. Greenberg's medical treatment partially reasonable and necessary, and surveillance video taken of Claimant. *Id*. at 8-10.

The WCJ issued his opinion on April 16, 2020. The WCJ granted Employer's suspension petition upon concluding that Claimant had the correct address for the IME, and therefore her failure to attend was due to her own fault. WCJ Op. at 36. The WCJ granted Employer's UR petition concerning Dr. Greenberg's medical care and denied Claimant's UR petition also concerning Dr. Greenberg's care upon determining that Dr. Greenberg's treatment of Claimant was not reasonable and necessary, particularly as to the Hydrocodone liquid, Percocet,

---

[1] The WCJ's decision addressed and resolved additional petitions and issues that have not been raised in this appeal by either side.

Valium, and office visits every twenty days for prescription refills and injections. *Id*. at 33-34 & 36. Finally, the WCJ *sua sponte* ordered Claimant to undergo drug testing for opioids every sixty days. *Id*. at 37. If a test returns a positive result, Employer may ask that Claimant enroll in an in-patient rehabilitation program run by Johns Hopkins, at Employer's expense, and if Claimant refuses, Employer may seek immediate suspension of her benefits. *Id*. at 38.

The Board denied Employer's motion to quash, which asserted that Claimant's appeal waived all issues for lack of specificity in the notice of appeal, but affirmed the WCJ's opinion in full. The Board concluded that Claimant's presentation was deficient, but the record was sufficient to allow it to conduct review limited to whether the WCJ's determinations were supported by substantial evidence of record. Board Op., 5/19/21, at 1 & 6-7; R.R. "A." Claimant appeals to this Court, challenging the lower tribunals' merits determinations, and Employer appeals the Board's denial of its motion to quash.[2]

## II. Discussion

### A. Board's Denial of Employer's Motion to Quash

Section 111.11 of the regulations related to the Pennsylvania Workers' Compensation Act (Act)[3] states that an appeal of a WCJ's determination to the Board shall be filed on a form provided by the Board and that

---

[2] On appeal, this Court's scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed and whether necessary findings of fact were supported by substantial evidence. *Morocho v. Workers' Comp. Appeal Bd. (Home Equity Renovations, Inc.)*, 167 A.3d 855, 858 n.4 (Pa. Cmwlth. 2017). On questions of law, our scope of review is plenary, and our standard of review is *de novo*. *Edwards v. Workers' Comp. Appeal Bd. (Epicure Home Care, Inc.)*, 134 A.3d 1156, 1161 (Pa. Cmwlth. 2016).

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

4

[a]ll forms must contain the following information: . . . A statement of the particular grounds upon which the appeal is based, including reference to the specific findings of fact which are challenged and the errors of the law which are alleged. General allegations which do not specifically bring to the attention of the Board the issues decided are insufficient.

34 Pa. Code § 111.11(a)(2).

In *Jonathan Sheppard Stables v. Workers' Compensation Appeal Board (Wyatt)*, 739 A.2d 1084 (Pa. Cmwlth. 1999), the employer's appeal used the Board's standard form and language and enumerated the findings of fact in the WCJ's decision being appealed and stated that they were not supported by substantial evidence. *Id*. at 1088. The appeal also enumerated conclusions of law in the WCJ's decision ("2-10"), after using the standard language on the appeal form: "I hereby appeal from the decision of [the WCJ] and specify the following errors of law committed by the said [WCJ], *and the reasons why the decision does not conform to the provisions of the [Act]*." *Id*. (emphasis added). Notably, while the employer enumerated the conclusions it sought to challenge, it did not take the further step of specifying the reasons why the decision violated the Act. *Id*.

Despite having failed to specify to the Board its legal reasons in its appeal documentation, the employer in *Jonathan Sheppard Stables* briefed and argued several particularly alleged legal errors by the WCJ, including whether the claimant was in the course and scope of employment when injured and whether the WCJ correctly awarded disfigurement benefits. *Id*. It is not clear whether the Board addressed the employer's legal issues. *Id*. at 1087. When the employer subsequently appealed to this Court, however, we found employer's legal issues waived for purposes of appeal:

> Employer utterly failed to raise any of the foregoing claims of error with any degree of specificity in its appeal to the Board. . . . [I]n specifying the errors of law committed by the WCJ and the reasons why his decision does not conform to the provisions of the Act, Employer merely stated "2-10" on the appeal form to the Board. It is unclear as to what "2-10" is meant to convey as a basis for the appeal to the Board, and such a cryptic assertion clearly does not specify the errors of law committed by the WCJ or why his decision does not conform to the provisions of the Act.

*Id*. at 1089 & n.5. We did not, however, find the employer had waived its assertions that the WCJ's factual determinations were not supported by substantial evidence, and we affirmed on those grounds. *Id*. at 1089-91.

Likewise, in *Matticks v. Workers' Compensation Appeal Board (Thomas J. O'Hara Co., Inc.)*, 872 A.2d 196 (Pa. Cmwlth. 2005), we stated:

> Here, Employer followed the identical appeal process utilized by the employer in *Jonathan Sheppard Stables*. Employer's appeal form simply listed WCJ Spizer's findings of fact (Nos. 3-19) that allegedly were not supported by substantial competent evidence and listed the WCJ's conclusions of law (Nos. 2-5) that allegedly contained errors of law. . . . Based on *Jonathan Sheppard Stables*, the Court is compelled to agree with Claimant that Employer effectively waived its [legal] arguments . . . because Employer failed to properly preserve those issues in its appeal.

*Id*. at 202; *see also Steglik v. Workers' Comp. Appeal Bd. (Delta Gulf Corp.)*, 755 A.2d 69, 74 (Pa. Cmwlth. 2000) (holding that merely listing conclusion of law by number is insufficient to preserve legal issue for appeal).

Recently, in *W&W Contractors, Inc. v. Workers' Compensation Appeal Board (Holmes)* (Pa. Cmwlth., No. 836 C.D. 2020, filed June 28, 2021), 2021 WL

6

2644493 (unreported),[4] the employer argued that all it needed to preserve a legal challenge to the WCJ's award of attorneys' fees to the claimant was to list the corresponding finding of fact and conclusion of law in its appeal to the Board, and that any explanation of why these were being challenged was not necessary. *W&W Contractors*, slip op. at 11-12, 2021 WL 2644493, at *5. Relying on *Jonathan Sheppard Stables*, we held that simply listing the challenged conclusion of law was insufficient to preserve the specific legal issue and it was therefore waived on appeal. *Id*. at 15-16, 2021 WL 2644493, at *7. In this regard, a party's failure to appeal an issue with the requisite specificity cannot be cured by addressing the issue in its brief. *McGaffin v. Workers' Comp. Appeal Bd. (Manatron, Inc.)*, 903 A.2d 94, 102 (Pa. Cmwlth. 2006); *see also Matticks*, 872 A.2d at 202.

As these cases illustrate, an appeal to the Board that enumerates a WCJ's challenged findings of fact and asserts that they are not supported by substantial evidence will be sufficient to preserve those issues. However, to the extent a party seeks to raise legal issues to the Board but only lists the challenged conclusions of law without also specifying the legal basis for appeal in its documentation, those claims will be deemed waived.

Here, Claimant's appeal to the Board states that numerous findings of fact, primarily pertaining to Claimant's and Employer's medical experts' testimony and to the WCJ's related credibility determinations, were not supported by substantial evidence. Certified Record (C.R.) at 105. Pursuant to *Jonathan Sheppard Stables*, these record-based factual challenges were sufficiently preserved for appeal. 739 A.2d at 1089-91.

---

[4] Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

Claimant also enumerated the WCJ's unfavorable conclusions of law for appeal, but she did not specify the nature of her legal issues or explain why the listed conclusions amounted to legal error. C.R. at 105. This was insufficient, as discussed in the cases above. *Matticks*, 872 A.2d at 202; *Steglik*, 755 A.2d at 74; *Jonathan Sheppard Stables*, 739 A.2d at 1089 & n.5; *see also W&W Contractors*, slip op. at 15-16, 2021 WL 2644493, at *7. We therefore conclude that the Board did not err in denying Employer's motion to quash, but limiting its review to whether the WCJ's determinations were supported by substantial evidence. Board's Op. at 7. As such, we proceed to the merits on the same basis of review.

## B. Claimant's Non-Attendance at IME

The primary role of the WCJ in workers' compensation matters is well settled:

> The WCJ is the fact finder, and it is solely for the WCJ . . . to assess credibility and to resolve conflicts in the evidence. Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations. In addition, it is solely for the WCJ, as the factfinder, to determine what weight to give to any evidence. . . . As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted.

*Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Emp. Guar. Fund)*, 159 A.3d 61, 69 (Pa. Cmwlth. 2017) (internal citations, quotations, and brackets omitted). "Determining the credibility of the witnesses is the quintessential function of the fact finder . . . . It is not an exact science, and the ultimate conclusion comprises far more than a tally sheet of its various components." *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr.*

8

*Co.)*, 893 A.2d 191, 195-96 (Pa. Cmwlth. 2006) (declining to "dissect and analyze each of the WCJ's reasons for his credibility determination").

"Substantial evidence" is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *See Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003). In performing a substantial evidence analysis, we view the evidence in a light most favorable to the party that prevailed before the WCJ. *Id.* In a substantial evidence analysis where both parties present evidence, it is immaterial that there is evidence in the record supporting a factual finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether there is any evidence that supports the WCJ's factual finding. *Id.* Mere speculation or conjecture is insufficient to support a factual finding, but where there exists the ability to draw reasonable and logical inferences from evidence that is presented, including testimony, a conclusion so derived will be sufficient, even if it may not be the only possible conclusion. *W. Penn Allegheny Health Sys., Inc. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021) (citing *Fitzpatrick v. Natter*, 961 A.2d 1229, 1241-42 (Pa. 2008)).

Section 314 of the Act requires an injured employee to submit to an IME paid for by the employer, including reasonable traveling expenses; an employer may secure a WCJ's order compelling the claimant to attend. 77 P.S. § 651. Failure to appear for an IME without a reasonable excuse, which is the claimant's burden to establish, will result in suspension of the claimant's wage loss benefits until an IME can occur. *Id.* As the factfinder, the WCJ decides whether a claimant's excuse for non-attendance is reasonable, and we will not disturb that conclusion absent an abuse

9

of discretion. *Wolfe v. Workmen's Comp. Appeal Bd. (Edgewater Steel Co.)*, 636 A.2d 1293, 1298 (Pa. Cmwlth. 1994).

Claimant avers that her actions the day of the scheduled IME should have been viewed by the WCJ as a good faith effort and a reasonable excuse for failing to attend the IME. Claimant's Br. at 16-18. Employer responds that the WCJ's refusal to do so was supported by substantial evidence of record. Employer's Br. at 17-18.

The record supports the WCJ's determination that Claimant did not provide a reasonable excuse for her failure to attend the IME. Claimant's affidavit stated that her attorney's office gave her an address in Lemoyne and her caregiver-driver Shannon Fields printed directions to that address. C.R. at 441. They arrived on time for the scheduled IME but were told they were not in the system for an appointment. *Id*. at 442. They were given another address for Dr. Beutler in Mechanicsburg, which was also incorrect. *Id*. They were finally given the correct address in Harrisburg, but by the time they arrived, nearly three hours after the appointment time, Dr. Beutler had left for the day. *Id*. They tried calling Claimant's counsel several times but were unsuccessful. *Id*. Ms. Fields provided an affidavit with similar assertions. *Id*. at 465-67.

The record also includes an affidavit from Employer's IME vendor (IMX) stating that an appointment letter with the correct Harrisburg address (which is also of record) was sent to Claimant and her counsel and the address was confirmed with counsel's office prior to the IME date; the affidavit adds that IMX does not conduct IMEs in Lemoyne or Mechanicsburg. *Id*. at 551-54. At a September 11, 2017, hearing, Claimant's counsel acknowledged on the record that

the WCJ's order and the IMX letter gave the correct address to Claimant before the date of the IME. C.R. at 212-14.

The WCJ concluded that Claimant failed to establish that her excuse for non-attendance was reasonable:

> The WCJ's 8/4/17 decision directing Claimant to attend the IME with Dr. Beutler clearly identified the time, place, and address of the IME. The WCJ decision was sent to and received by Claimant and her counsel. The 5/25/17 IMX scheduling letter that was sent to Claimant and her counsel set forth the time, place, and address of the IME. The WCJ decision gave Claimant the opportunity to have [Employer] provide transportation to and from the IME. Claimant chose not to avail herself of this opportunity to have travel provided to her and Claimant assumed personal responsibility for attending the IME. The WCJ finds that fully adequate notice of the time, place, and address of the IME and the opportunity to have [Employer] provide transportation to attend the IME were given to Claimant and Claimant failed in her responsibility to attend the IME through her own fault.

WCJ Op. at 33; R.R. "A."

Claimant does not dispute that the WCJ's IME order and IMX's letter advised both her and her counsel of the correct address or that she had the opportunity for Employer to transport her to the IME but chose instead to be personally responsible for her attendance. Therefore, the WCJ's conclusion that Claimant did not provide a reasonable excuse for her non-attendance and to suspend her wage loss benefits until she attended an IME on November 30, 2017, is supported by substantial evidence of record. The WCJ, therefore, did not abuse his discretion in so holding, and the Board did not err in affirming on this issue.

### C. Claimant's Access to Opioid Pain Medication

Pursuant to Section 306 of the Act, the employer bears the burden in UR proceedings to establish the reasonableness and necessity of an injured worker's medical treatment. 77 P.S. § 531(6); *Topps Chewing Gum v. Workers' Comp. Appeal Bd. (Wickizer)*, 710 A.2d 1256, 1258 (Pa. Cmwlth. 1998). Either party may request review, which is conducted by a medical professional in the same field as that of the provider under review. 77 P.S. § 531(6)(i). The reviewer issues a report which may then be appealed to the WCJ, who considers the report but is not bound by it. 34 Pa. Code § 127.556. Treatment may be reasonable and necessary even if it provides solely palliative relief and does not cure the underlying injury. *Ryndycz v. Workers' Comp. Appeal Bd. (White Eng'g)*, 936 A.2d 146, 151-52 & n.4 (Pa. Cmwlth. 2007). However, the WCJ may find palliative treatment unreasonable and unnecessary where it is shown to be of little value due to the passage of time or other considerations. *Howrie v. Workers' Comp. Appeal Bd. (CMC Equip. Rental)*, 879 A.2d 820, 822-23 (Pa. Cmwlth. 2005).

In *Fanning v. Workers' Compensation Appeal Board (Lower Merion School District)* (Pa. Cmwlth., No. 992 C.D. 2018, filed May 2, 2019), 2019 WL 2400487 (unreported), the WCJ found the claimant's ongoing use of opioids for pain unreasonable and unnecessary. *Id*., slip op. at 10, 2019 WL 2400487, at *4. We affirmed, noting:

> Given the change in the way these medications are being used in the medical community, as reflected in Dr. Pharo's observation of the current American Medical Association guidelines for those medications, and Dr. Cicuto's indication that there has "been a significant change in the use of opioids in chronic pain management," it is not unreasonable for an employer to question the ongoing, long term prescription of opioids to claimants. As we stated in *Troutman [v. Workers' Compensation Appeal Board (Norristown Ford)* (Pa. Cmwlth., No. 724 C.D.

12

> 2014, filed April 10, 2015), 2015 WL 5436751
> (unreported)], "it [is] not unreasonable for [the employer]
> to have questioned the ongoing utility of the treatments, as
> [the employer] would ultimately be liable for any potential
> negative consequences that could occur."

*Id*., slip op. at 16-17, 2019 WL 2400487, at \*9. Likewise, in *Bedford Somerset MHMR v. Workers' Compensation Appeal Board (Turner)*, 51 A.3d 267 (Pa. Cmwlth. 2012), we affirmed the WCJ's determination that the claimant's ongoing use of opioids was neither reasonable nor necessary because the physical and psychological risks of opioids, given their highly addictive nature, outweighed the palliative benefits the claimant received from them. *Id*. at 274-75 (citing *Sweigart v. Workers' Comp. Appeal Bd. (Burnham Corp.)*, 920 A.2d 962 (Pa. Cmwlth. 2007)). If, however, a claimant can present rebuttal medical evidence that ongoing opioid treatment is reasonable and necessary, the treatment may be upheld so long as the record evidence supports that conclusion. *Loc, Inc. v. Workers' Comp. Appeal Bd. (Graham)*, 936 A.2d 1213, 1216 (Pa. Cmwlth. 2007) (noting WCJ's conclusion that the claimant's treating doctor, who prescribed the opioids, was credible and in the best position to monitor the claimant's condition and any ongoing effects).

Here, Claimant argues that the WCJ's determination that Dr. Greenberg's treatment was not reasonable or necessary, which resulted in Employer no longer having to pay for Claimant's opioid prescriptions, was not supported by substantial evidence and that a more reasonable disposition would have been to craft an order enabling Claimant to wean off her medications. Claimant's Br. at 19-20. Employer responds that the WCJ's decision was based on reasonable credibility determinations in favor of Employer's medical experts, Dr. Beutler and Dr. Clark, who testified that Claimant should no longer be on opioids and recommended an in-patient rehabilitation program at Employer's expense. Employer's Br. at 19-24.

13

The record includes the UR report upon which Employer based its petition, which concluded that Dr. Greenberg's treatment was partially reasonable and necessary as of May 24, 2017, and ongoing. C.R. at 537-40. The report would approve Claimant's ongoing daily use of Percocet or Valium, but not both, because they are dangerous in combination. *Id*. The report would not approve her ongoing daily use of Hydrocodone liquid because it is also risky in combination with Claimant's other medications. *Id*.

Claimant testified on November 9, 2017, before the WCJ. She took two Percocet every four hours for pain and had been on it since 1994-95. C.R. at 258, 275 & 292. She also took a Hydrocodone liquid. *Id*. She took Valium as needed for tremors and muscle relaxation. *Id*. at 264 & 274. Without her medications, she believed she would sustain severe pain, swelling, and inflammation. *Id*. at 259.

Claimant testified before the WCJ again on December 21, 2018. She stated she felt worse than when she testified the previous year. C.R. at 372. She acknowledged that surveillance video taken by Employer made her look functional but explained that the bags she is seen carrying in the video were just bottled drinks and tissues that she needed to carry in bags because her hands were weak. *Id*. at 373-74. Dr. Greenberg, whom she had been seeing for years, sold his practice in late 2017 (he died shortly thereafter) and Claimant claimed that her new doctors declined to continue her prescriptions because Employer refused to pay for them. *Id*. at 380-83 & 414. She had not been able to take either Percocet or Hydrocodone since December 2017. *Id*. She denied drug-seeking behavior, misuse of her medications, insurance fraud, and personal conduct that led her new doctors to discharge her from their care. *Id*. at 387-88, 394, 401 & 404.

14

Claimant stated that she went to the emergency room (ER) in February 2018 due to reactions from not having regular access to her opioid medications since December 2017. C.R. at 391. She acknowledged, however, that she tested positive for opioids at that time and explained that she still had medications left over after her last prescription was filled in December 2017. *Id*. at 399-400. She went to the ER again for similar reasons in March 2018 and told doctors that she was not on any medication at that time; however, she acknowledged a positive test for Oxycodone at that visit. *Id*. at 400-03 & 413-14. She denied that she is addicted to opioids, that her family asked her to go to a drug rehabilitation program, or that she was advised by doctors during a subsequent June 2018 hospitalization to enter a program. *Id*. at 411-13. She maintains she is not currently on opioids. *Id*. at 417.

Dr. Beutler testified in a deposition that he is a board-certified neurosurgeon. C.R. at 565. He saw Claimant for an IME on November 30, 2017, after the August 2017 IME did not occur. *Id*. at 569. Claimant presented with persistent neck pain, numbness, and pressure ranging from her head to her shoulders since the 1993 injury. *Id*. at 571-72. She described bilateral upper extremity and hand pain and weakness but no radicular or radiating symptoms. *Id*. at 572.

Dr. Beutler stated that during the IME, he observed what he believed to be symptom magnification in that she reported dramatic pain, weakness, and sensitivity in her arms and shoulders, but had no difficulty getting into her coat after the IME using similar movements as he asked of her during the IME. *Id*. at 580-81. Her responses during the sensory part of the IME were also anatomically inconsistent with her accepted injuries. *Id*. at 581-83. He noted that her reflexes were normal and that he detected no muscle spasms, both of which are objective signs that a patient cannot manipulate. *Id*. at 583-84. Her reported condition and

reactions during the IME also did not correlate with her most recent diagnostic imaging results. *Id*. at 588-89. Likewise, he viewed her surveillance video and found her largely functional on it, including using her neck and shoulders to hold her cell phone, which was inconsistent with her subjective reactions during the IME. *Id*. at 597-99.

Dr. Beutler did not believe that Claimant was fully recovered from her work-related injuries, but nonetheless opined that the opioids she had been taking since the mid-1990s are no longer reasonable and necessary for her in light of current views that long-term use of narcotic pain medication is a source of physical and psychological dependence. C.R. at 590-92. His review of her medical records also indicated instances of drug-seeking behavior, including threatening her doctors with lawsuits if they did not fill her prescriptions. *Id*. at 593-94. Dr. Beutler recommended that Claimant enter an in-patient program to wean her off opioid medications and replace them with non-narcotic medications and other therapies for pain management. *Id*. at 605.

Dr. Clark testified in a deposition. He is currently Chair of the Department of Psychiatry and Behavioral Health at Inova Fairfax Medical Center in Virginia and until recently served in a similar position at Johns Hopkins, where he was director of the in-patient drug rehabilitation and pain management program. C.R. at 654-55 & 660-61. He is board certified in psychiatry and licensed in Maryland and Virginia, but not Pennsylvania. *Id*. at 655-56. On Employer's request, he reviewed Claimant's medical records and prepared a report. *Id*. at 662.

Dr. Clark concluded that while he agreed with Claimant's current diagnosis, none of Claimant's current treatments, particularly extensive narcotic medications, were reasonable and necessary and that she would be a good candidate

16

for an in-patient program like the one at Johns Hopkins. C.R. at 666-67 & 681-84. Like Dr. Beutler, Dr. Clark spoke of the evolution in perceptions regarding narcotic medications since the 1990s and the current view that long-term use of opioids presents great physical and psychological risks of dependence and addiction. *Id*. at 668-72. Based on his view of her surveillance video, he believed she is functional and might be taking her medications at this point for the wrong reasons, although he acknowledged that when she was filmed, she may have recently taken her medication and therefore was more functional than she might have been without it. *Id*. at 672 & 687-90. An in-patient program would have team-directed care for her drug rehabilitation and pain management, including condition-specific physical therapy, and would be more beneficial than merely stopping her medications without the support of an in-patient program. *Id*. at 674-80 & 695.

In response to Employer's medical evidence, Claimant attempted to submit transcripts of Dr. Greenberg's 2014 and 2015 depositions in prior UR litigation since Dr. Greenberg was no longer alive to testify. C.R. at 361-62. Another former treating doctor had relocated out of state and was also unavailable to testify. *Id*. at 362. Upon Employer's objection, the WCJ declined to allow the transcripts in except for purposes of appeal by Claimant. *Id*. at 364. Claimant did not appeal the WCJ's evidentiary ruling to the Board; therefore, the record contains no rebuttal medical evidence on Claimant's behalf.

The WCJ found Dr. Beutler and Dr. Clark, who both testified that Claimant should be taken off all opioids, credible in light of their backgrounds in neurosurgery and pain management. WCJ Op. at 33. The WCJ also credited Dr. Beutler and Dr. Clark over the UR reviewer, who would have approved ongoing use of Percocet or Valium, but not both, because their credentials outweigh those of the

17

reviewer, who was certified in family practice.[5] *Id*. The WCJ therefore found Employer had met its UR burden of proof and found Claimant's ongoing use of opioids neither reasonable nor necessary. *Id*. & WCJ Order.

We agree. As finder of fact, the WCJ is tasked with the primary roles of determining the credibility of witnesses and weighing the evidence, neither of which this Court may usurp. *See Hawbaker*, 159 A.3d at 61. Here, moreover, all three medical witnesses concluded that Claimant's ongoing use of opioids was not beneficial for her – even the UR reviewer, who would have curtailed rather than eliminated Claimant's opioid use. Dr. Beutler and Dr. Clark both explained the evolution since the 1990s when opioids entered wide distribution to the current view that their long-term use creates risks of dependence and addiction that far outweigh their palliative benefits. C.R. at 590-92 & 668-72. Claimant's argument that the WCJ erred by denying payment for Claimant's medications without giving her the opportunity to be weaned off them is also refuted by the record, in that Dr. Beutler and Dr. Clark both recommended that Claimant enter an in-patient program for opioid rehabilitation and pain management, which would be paid for by Employer. *Id*. at 605-07 & 675-78. At any rate, the standard of review is whether a factfinder's determination is supported by substantial evidence of record, not whether another conclusion could also have been made. *Waldameer Park*, 819 A.2d at 168. Because the WCJ's determination that Claimant's ongoing use of opioids is no longer reasonable or necessary is supported by substantial evidence of record, the WCJ did not abuse his discretion in so holding, and the Board did not err in affirming on this issue.

_____

[5] As noted, the UR reviewer must practice in the same field of medicine as that of the provider under review. 77 P.S. § 531(6)(i). As Dr. Greenberg was a family practice doctor, the reviewer was therefore appropriate for UR purposes.

18

## D. WCJ's Order Requiring Drug Testing

Section 314 of the Act authorizes a WCJ to order a claimant to undergo a "physical examination," which may include an IME or non-invasive diagnostic testing. 77 P.S. § 651; *Coleman v. Workers' Comp. Appeal Bd. (Indiana Hosp.)*, 842 A.2d 349, 354-56 (Pa. 2002). After an initial examination, "upon petition of the employer," the WCJ may "order the employe to submit himself to such further physical examinations or expert interviews as the [WCJ] shall deem reasonable and necessary, at such times and places and by such health care provider or other expert as the [WCJ] may designate[.]"[6] 77 P.S. § 651.

Drug screening in the UR context is usually aligned with and approved for a claimant's ongoing use of opioids to ensure that the claimant is using them properly and subject to medical supervision. *Rogele, Inc. v. Workers' Comp. Appeal Bd. (Hall)*, 198 A.3d 1195, 1202 (Pa. Cmwlth. 2018). Here, however, the UR report

---

[6] The usual vehicle for an employer to seek an examination is a petition to compel. Here, however, Employer did not seek or ask the WCJ to order drug testing of Claimant. Instead, Employer's goal was to convince the WCJ to order Claimant to enter an in-patient program to wean off opioids. As such, Employer filed a petition to suspend benefits based on Claimant's alleged refusal to undergo such a program, and a petition to review medical treatment, which is generally filed when an employer seeks to challenge whether treatment is causally related to the work-related injury. *Bloom v. Workmen's Comp. Appeal Bd. (Keystone Pretzel Bakery)*, 677 A.2d 1314, 1317-18 (Pa. Cmwlth. 1996).

However, strict pleading is not required in workers' compensation and a WCJ may generally award such relief as is supported by evidence so long as the affected party is not taken by surprise or prejudiced by the nature of the remedy. *See Frontini v. Workers' Comp. Appeal Bd. (Parks Moving & Storage)*, 702 A.2d 8, 12-13 (Pa. Cmwlth. 1997) (termination of benefits upheld where claimant knew employer intended to contest duration of injury even though employer did not file a termination petition). Here, Claimant does not argue that she was caught off guard or prejudiced by the WCJ's order that she undergo periodic testing. Therefore, if the record evidence supports the disposition, the WCJ did not abuse his discretion in construing Employer's petitions as a petition to compel periodic drug screening. *See* WCJ Op. at 37.

19

does not indicate that Dr. Greenberg was conducting routine opioid testing of Claimant as part of her treatment regimen; and the question of whether a WCJ may order drug testing outside of an approved medical treatment plan using opioid medication, apparently solely for the purpose of monitoring whether the claimant seeks opioids from another health care provider or source, appears to be one of first impression. *See* C.R. at 530-42. However, to the extent a claimant can be weaned off opioids and increase his or her prospects for a return to more normal functioning and perhaps some ability to again be employed, an in-patient program has been found reasonable treatment such that its refusal may be the basis for suspension of benefits. *See Bereznicki v. Workers' Comp. Appeal Bd. (Eat 'N Park Hosp. Grp.)*, 989 A.2d 46, 48 (Pa. Cmwlth. 2009) (affirming WCJ's suspension of benefits when claimant refused to undergo detoxification program).

Claimant argues that since the WCJ effectively terminated her access to opioids by granting Employer's UR petition concerning Dr. Greenberg's treatment, the WCJ's order that she submit to drug testing is irrelevant and unreasonably intrusive. Claimant's Br. at 21-22. Employer responds that in light of record evidence that Claimant has shown drug-seeking behavior and tested positive for opioids even after she stated she was no longer taking them, the WCJ's order of regular screening was within his discretion and supported by the record. Employer's Br. at 24-26. Employer adds that even though it may no longer be paying for Claimant's opioid prescriptions from Dr. Greenberg, drug screening to ensure that Claimant remains off opioids is in Claimant's best interests, given the high risks of ongoing use. *Id*. at 26.

Claimant's argument that the WCJ's order of ongoing drug testing is irrelevant and unreasonable is essentially legal in nature, although dependent on the

facts as found by the WCJ. As noted above, however, Claimant failed to set out and preserve this specific legal argument to the Board beyond listing the corresponding conclusion of law in the WCJ's decision. *See* C.R. at 105. Therefore, to the extent Claimant asks this Court to review this aspect of the WCJ's determinations as a matter of law, any such issues are waived for purposes of this appeal. *See McGaffin*, 903 A.2d at 101-02; *Matticks*, 872 A.2d at 201-02; *Jonathan Sheppard Stables*, 739 A.2d at 1089-91. Our review is therefore limited to whether the WCJ's drug testing order is supported by substantial evidence of record.

Claimant testified in December 2018 that she was no longer on opioids since she could not get prescriptions from her new doctors; she denied abusing them, being addicted to them, or exhibiting drug-seeking behavior. C.R. at 380-82, 388, 401, 411, 413 & 417. She acknowledged, however, that she had tested positive for opioids at ER visits post-dating the time when she could no longer get opioids from Dr. Greenberg. *Id.* at 399 & 413. She denied being asked or refusing to go to an in-patient rehabilitation program. *Id.* at 403 & 411-12. Dr. Beutler testified that the current standard of care does not support Claimant's extensive daily use of multiple opioid medications due to their physical and psychological addiction risks; he stated that getting Claimant off of opioids is the "number one thing that has to be pursued, if she's going to maintain any degree of health[.]" *Id.* at 590-93. His review of Claimant's records revealed instances of drug-seeking behavior in which she threatened doctors with litigation if they did not continue prescribing her opioids. *Id.* at 594. He recommended an in-patient program for rehabilitation and non-opioid pain management. *Id.* at 603-07.

Like Dr. Beutler, Dr. Clark stated that based on his experience in pain management, the evolving standard of care for use of opioids, and his review of

Claimant's records, she is a typical candidate for a comprehensive in-patient program like the one he supervised at Johns Hopkins; these programs have low risks and proven health benefits. C.R. at 667-68 & 677-80. He found it likely "that she is taking these medicines for, potentially, the wrong reasons and not getting the kind of benefit that you would expect her to get, and that she really should be tapered off of them." *Id*. at 672. Dr. Beutler and Dr. Clark both believed that Claimant needs to be off opioids altogether and did not agree with the UR reviewer that Claimant could continue on either Percocet or Valium, but not both. *Id*. at 602 & 684.

After the close of evidence, the WCJ concluded that an in-patient program as recommended by Dr. Beutler and Dr. Clark would be reasonable compared with continued use by Claimant of opioids in the same amounts she had been taking for years. WCJ Op. at 35 & 37. The WCJ gave some credit to Claimant's testimony in December 2018 that she had not been able to get opioids in the same volume after late 2017, when Dr. Greenberg no longer was available to prescribe them for her. *Id*. However, based on Claimant's positive test for opioids in March 2018 after she stated she was no longer able to get them from a treating doctor, the WCJ concluded that Claimant's December 2018 testimony that she was completely free of opioids was not fully credible. *Id*.

Given the WCJ's conclusion that Claimant was possibly still on opioids in 2018, albeit less than before, the WCJ declined to suspend her wage loss benefits for not entering an in-patient program "at this time."[7] WCJ Op. at 37. However, the WCJ credited the opinions of Dr. Beutler and Dr. Clark and determined that to leave Claimant in a position where she might be able to access and use opioids from

---

[7] Had the WCJ decided to suspend Claimant's ongoing wage loss benefits based on a finding that she refused the reasonable treatment of an in-patient program, this Court has affirmed such determinations in the past. *See Bereznicki*, 989 A.2d at 48.

another provider or source[8] posed health risks, including mortality. *Id*. at 35-37. Therefore, to ensure Claimant did not resume her daily use of large amounts of opioids, the WCJ concluded that drug testing every sixty days at Employer's expense was warranted, and if Claimant returns a positive test, Employer may ask Claimant to enter an in-patient program and seek immediate suspension of her benefits if she refuses. *Id*. at 38. As noted, the WCJ stated that he was treating Employer's suspension and medical review petitions as a petition to compel drug testing pursuant to Section 314 of the Act. *Id*. at 37.

Here, the WCJ considered Claimant's in-person testimony and deduced that while she had already undergone withdrawal due to lack of consistent access to prescriptions, her subsequent positive tests indicated limits to her credibility on the issue of her opioid usage. The testimony of Dr. Beutler and Dr. Clark highlighted the need for Claimant to be off opioids, preferably but not necessarily through an in-person program. The WCJ's order provides a means to accomplish that goal and is supported by the record evidence. We therefore find the WCJ did not abuse his discretion in so holding and the Board did not err in affirming on this issue.[9]

---

[8] UR is specific to the provider under review and not the treatment. Therefore, were Claimant to find another provider willing to prescribe opioids, Employer would not be able to rely on the UR concerning Dr. Greenberg to contest Claimant's ongoing use of such medications. *Schenck v. Workers' Comp. Appeal Bd. (Ford Elec.)*, 937 A.2d 1156, 1161-62 (Pa. Cmwlth. 2007).

[9] Although Claimant waived her legal argument asserting that the WCJ's order is unreasonable by failing to specify it in her appeal documentation, any such argument is meritless. The WCJ's *sua sponte* ordering of periodic drug testing as a condition of continued benefits is a considered compromise between the drastic approach of ordering Claimant directly to an in-patient rehabilitation program on pain of losing her benefits and the unwelcome option of allowing her to resume her longtime extensive opioid use if she finds a provider willing to do so. In that sense, although the WCJ's order is not specifically authorized by the Act, it is an equitable remedy of the kind this Court has found may be applied in workers' compensation matters. *See Kiebler v. Workers' Comp. Appeal Bd. (Specialty Tire of Am.)*, 738 A.2d 510, 516 (Pa. Cmwlth. 1999) ("We similarly sanctioned the use of equitable remedies and defenses in workers' compensation

23

### III. Conclusion

Based on the facts and evidence in this case, we affirm the WCJ's decision and order.

_____
CHRISTINE FIZZANO CANNON, Judge

---

proceedings, despite the absence of any provision in the Act specifically authorizing such a remedy, in [*Roadway Express, Inc. v. Workmen's Compensation Appeal Board (Allen)*, 618 A.2d 1224 (Pa. Cmwlth. 1992)] (doctrine of laches applies in workers' compensation proceedings[.]")).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Joan M. Rotegliano, | : | **CASES CONSOLIDATED** |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Clinton Hospital Corporation (Workers' | : | |
| Compensation Appeal Board), | : | No. 616 C.D. 2021 |
| Respondent | : | |
| | : | |
| | : | |
| Clinton Hospital Corp., | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Joan M. Rotegliano (Workers' | : | |
| Compensation Appeal Board), | : | No. 628 C.D. 2021 |
| Respondent | : | |

# O R D E R

AND NOW, this 12th day of May, 2022, the May 19, 2021, decision and order of the Workers' Compensation Judge is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge